IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Washington, : 
      Petitioner : 
            : 
    v.          :   No. 485 M.D. 2020
            :   Submitted: January 22, 2021
The PA Department of Corrections, : 
      Respondent : 


BEFORE:   HONORABLE MARY HANNAH LEAVITT, Judge
       HONORABLE PATRICIA A. McCULLOUGH, Judge
       HONORABLE J. ANDREW CROMPTON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON        FILED: December 30, 2021


    Before us in our original jurisdiction is the preliminary objection in the nature of a demurrer filed by the Pennsylvania Department of Corrections (DOC) to Thomas Washington's (Washington) petition for review (Petition), which challenges the mandatory deductions of 25% from his inmate account under 42 Pa. C.S. §9728(b)(5), known as Act 84.[1] Washington, who is *pro se* and currently incarcerated at the State Correctional Institution at Houtzdale, argues that the increase in deductions to 25% under the statute violates his constitutional due process rights. Because DOC lacks discretion to alter the amount of the deduction, Washington has not stated a constitutional claim; as such, we sustain the demurrer.

---

[1] Act 84 deductions are withdrawals from an inmate account made by a prison to defray court costs and for victim compensation. *See* Act of June 18, 1998, P.L. 640, No. 84 (Act 84).

# I. Background

In August 2020, Washington filed his Petition seeking relief from the amendments to Act 84 that mandated a 25% deduction from his inmate account, which represents an increase from the 20% DOC imposed, without notice or process to challenge the increase. Specifically, he criticizes the lack of any pre- or post-hearing process to show the financial burden imposed by the increase. Pet. ¶2. Washington avers that at the time of his sentencing hearing, "he understood and accepted the 20% deduction was something he could afford and still be able to afford extra food and toilet[ries], also any legal work that may need to be filed that requires a filing fee." Pet. ¶3. He alleges he did not argue mitigating factors or an inability to pay at the time of sentencing because he could afford 20% at that time, but he would have asserted mitigating factors had the amount been 25%. Pet. ¶7.

Washington asserts the automatic deductions violate his constitutional due process rights. Pet. ¶4. He also cites the Fair Debt Collection Practices Act, 15 U.S.C. §§1692-1692p, and the opportunity that must be afforded before setting the fine amount, which includes consideration of "the income, financial resources and earning capacity" of the defendant upon whom the fines will be imposed. Pet. ¶6. He notes that his average income is $30 a month, from which he pays for items at the commissary, and the cost of mailing increased so family contributions are effectively reduced. He also challenges the amount of the deductions when he also needs to utilize his funds for food and legal work. Pet. ¶9. Specifically, he claims the automatic 25% deductions violate the First, Seventh and Fourteenth Amendments to the United States Constitution, U.S. CONST. amends. I, VII, & XIV, and the *ex post facto* clause in the Pennsylvania Constitution, article I, section 17, PA. CONST. art. I, §17. Washington also sought *in forma pauperis* status, which this Court granted.

DOC filed a preliminary objection in the nature of a demurrer, asserting the deductions were authorized by Act 84. Relying on case law pre-dating the increase, DOC contends its authority to make deductions from inmate accounts in accordance with a court order is well established. It maintains that there is no need for a judicial hearing prior to the deductions; rather, the sentencing hearing provides adequate pre-deprivation process regarding an inmate's ability to pay. *See* Prelim. Objs. ¶¶9-10. In addition to case law predating the 2019 amendment to Act 84, DOC relies on the sentencing order as conferring the authority to make deductions from an inmate's account. It argues "the <u>deduction of 20%</u> of his spending money does not work any substantial hardship." *Id.* ¶13 (emphasis added). As to the increase, DOC advises that the current statute requires "deductions of *at least 25%*." *Id.* ¶15 (italics in original).

While Washington recognizes that in 2003, this Court upheld DOC's 20% deductions in *Buck v. Beard*, 834 A.2d 696 (Pa. Cmwlth. 2003), *aff'd*, 879 A.2d 157 (Pa. 2005), he asserts that the amendment to Act 84 increasing the amount from 20% to 25% on any funds received could have altered the outcome of his sentencing hearing and affected his ability to pay. *See* Answer to Prelim. Objs., ¶¶5-6. He notes: "By the standard the [R]espondent asserts there is not [sic] limit to the amount of money/deductions that [it] could take from [P]etitioner without a hearing or consent." *Id.*, ¶7. As relief, Washington seeks a hearing or a requirement that the amount be decreased to the 20% amount it was at the time of his sentencing. After briefing, we consider the legal sufficiency of the Petition.

## II. Discussion

In reviewing preliminary objections, we must accept as true all well-pled allegations of material facts, as well as all inferences reasonably deducible from

3

those facts. *Key v. Dep't of Corr.*, 185 A.3d 421, 423 n.3 (Pa. Cmwlth. 2018). However, this Court is not required to accept as true any unwarranted factual inferences, conclusions of law, or expressions of opinion. *Id.* Only where the pleading is "facially devoid of merit," should the demurrer be sustained, *Wurth by Wurth v. City of Philadelphia*, 584 A.2d 403, 406 (Pa. Cmwlth. 1990) (*en banc*) (citation omitted), and any doubt must be resolved in favor of the non-moving party. *Key*.

Moreover, the Courts customarily employ leniency when we construe *pro se*, prisoner-drawn allegations. *See Sutton v. Bickell*, 220 A.3d 1027, 1035 (Pa. 2019). This Court consistently holds: "The allegations of a *pro se* complainant are held to a less stringent standard than that applied to pleadings filed by attorneys. If a fair reading of the [petition for review] shows that the complainant has pleaded facts that may entitle him to relief, the preliminary objections will be overruled." *Dep't of Corr. v. Tate*, 133 A.3d 350, 354 n.8 (Pa. Cmwlth. 2016).

The claims asserted and briefed here focus on the lack of due process for challenging the increase in the automatic deductions from Washington's inmate account. Washington argues that, although inmate pay has not increased since the 1980s, and is between $20 and $30 per month, the commissary prices for food and toiletries has almost doubled over the same period. Pet'r's Br. at 1. He claims the costs of mailing, including legal mail, has increased such that increasing the deduction to "a quarter of the petition[er's] pay hinders the right to access the courts." *Id.* at 2.

## A. Due Process

In its most general form, due process requires notice of and a process for challenging the alleged property deprivation. *Bundy v. Wetzel*, 184 A.3d 551,

4

556 (Pa. 2018) (*Bundy I*). To satisfy due process under Act 84 before its 2019 amendment, our Supreme Court explained:

> [DOC] must, prior to the first deduction: (a) inform the inmate of the total amount of his financial liability as reflected in his sentencing order, as well as [DOC's] policy concerning the rate at which funds will be deducted from his account and which funds are subject to deduction; and (b) give the inmate a reasonable opportunity to object to the application of [DOC's] policy to his account. These measures will help protect against errors in [DOC's] application of its Act 84 deduction policy without significantly impeding its ability to carry out essential functions.

*Id.* at 558-59; *accord Montanez v. Sec'y, Pa. Dep't of Corr.*, 773 F.3d 472 (3d Cir. 2014). The Court noted that it was premature to consider the impact of deductions on an inmate's ability to litigate his rights at the demurrer stage, and thus remanded to this Court to allow development of such allegations. *See Bundy v. Wetzel* (Pa. Cmwlth., No. 553 M.D. 2016, filed Apr. 12, 2019), 2019 WL 1613026 (*Bundy II*).

Most recently, the Court in *Johnson v. Wetzel*, 238 A.3d 1172 (Pa. 2020), reinforced its holding in *Bundy I* that prisoners are entitled to notice of certain items and a reasonable opportunity to object before the first Act 84 deduction. *Id.* at 1182-83. These items included: "DOC's Act 84 deduction policy, the prisoner's total monetary obligation to the Commonwealth, the *rate at which funds will be deducted* from his account, and the funds which will be subject to withdrawals." *See Bundy I*, 184 A.3d at 558 (emphasis added). To the extent the circumstances do not allow a pre-deprivation process, "a meaningful post-deprivation remedy satisfies due process." *Johnson*, 238 A.3d at 1182 (quoting *Bundy I*, 184 A.3d at 557). As such, due process requires that the DOC, in response to an administrative grievance which accurately recites that no *Bundy* process was afforded prior to the first Act 84 deduction, must give the grievant

5

notice of the items required by *Bundy* and a reasonable opportunity to explain why the past and/or intended deductions should not take place notwithstanding the dictates of Act 84.

"Because [Washington] retains a property interest in the money in his account . . . any dispossession of that interest may only occur in conjunction with 'due process of law.'" *Bundy I*, 184 A.3d at 556 (quoting U.S. Const. amend. XIV, §1).[2] Acknowledging the interest in avoiding erroneous deprivations before they occur, the Court emphasized "a general preference that procedural safeguards apply in the pre-deprivation timeframe." *Id.* at 557. The Court held that some process is due with regard to Act 84 deductions to afford an inmate an opportunity to "raise an objection to the deduction scheme," which does not necessitate a judicial hearing and need not impose a heavy administrative burden. *Id.* at 558.

Relevant here, as amended,[3] subsection (b)(5)(i) of Act 84 states: "[DOC] shall make monetary deductions of at least 25% of deposits made to inmate wages and personal accounts for the purposes of collecting restitution . . . and any other court-ordered obligation." 42 Pa. C.S. §9728(b)(5)(i) (emphasis added). Additionally, the amendment provides that "[DOC] . . . shall develop guidelines relating to its responsibilities under this paragraph [(b)] . . . ." 42 Pa. C.S. §9728(b)(5)(iv).

---

[2] The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV.

[3] Act of December 18, 2019, P.L. 776, No. 115.

6

Importantly, prior to this amendment,[4] Act 84 did not specify a percentage for deduction, authorizing DOC to make deductions and allowing DOC to establish the amount. DOC implemented a policy regarding such deductions, DC-ADM 005. The policy stated the maximum amount of such deductions shall be 20% of monthly income and inmate account balance for "restitution, reparation, fees, costs, fines, and/or penalties associated with the criminal proceeding . . . provided that the inmate has a balance that exceeds $10.00." *Rohland v. A. Wakefield, Bus. Off. Huntingdon PA, DOC PA Agents Principles*, 226 A.3d 1224, 1228 (Pa. 2020) (quoting DOC Collection Policy, DC-ADM 005 at 3-1). There is no dispute that DOC did not provide notice of the increased deduction.

This Court and our Supreme Court have consistently held that DOC has clear legal authorization under Act 84 to effectuate deductions. Further, recently, in *Beavers v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 486 M.D. 2020, filed Dec. 9, 2021), this Court addressed the alleged due process violation in deducting the mandatory amount under Act 84, as amended.

In *Beavers*, in which the inmate's allegations are substantively similar to Washington's allegations here, we reasoned that the increased deduction set forth

---

[4] Act 84 of 1998 added subsection (b)(5) to Section 9728 of the Sentencing Code, stating:

> The county correctional facility to which the offender has been sentenced or [DOC] shall be authorized to make monetary deductions from inmate personal accounts for the purpose of collecting restitution or any other court-ordered obligation. Any amount deducted shall be transmitted . . . to the probation department of the county or other agent designated by the county commissioners of the county with the approval of the president judge of the county in which the offender was convicted. [DOC] shall develop guidelines relating to its responsibilities under this paragraph.

42 Pa. C.S. §9728(b)(5).

in the statute did not warrant additional notice or an opportunity to object. Our Supreme Court has not opined on the revised language contained in Act 84.

Critically, as recognized in *Beavers*, the statutory language materially differs from that in effect when *Bundy* and *Johnson* were decided.[5] The current statute does not afford DOC discretion over setting the amount and effectuating the deduction. As a consequence, DOC does not have the authority to exercise its discretion reasonably to discern whether the amount it deducts requires additional due process through an administrative process.

Accordingly, we impose no duty upon DOC to afford notice of the statutory amount prior to its deduction, allowing the notice required for the *first* deduction the amount of which was within DOC's discretion to comport with *Johnson*. Because Washington complains only about the increase in the amount of the deduction, we discern no due process claim and thus sustain DOC's demurrer.

### B. Ability-to-Pay Hearing

This Court's interpretive case law of the prior statutory language (*i.e.*, *George v. Beard*, 824 A.2d 393, 396 (Pa. Cmwlth.), *aff'd*, 831 A.2d 597 (Pa. 2003), and *Ingram v. Newman*, 830 A.2d 1099, 1102 (Pa. Cmwlth. 2003)), required a change-in-circumstances prerequisite for any ability-to-pay challenge. *Ingram* and *George* stand for the proposition that where changed circumstances occur, the inmate is entitled to a hearing regarding his ability to pay the fines after sentencing,

---

[5] Washington pled that he filed a grievance regarding the increase, and received an "unfruitful" response. Pet. ¶2. In the response to his grievance, DOC advised his grievance was untimely filed because the 25% had been deducted from his account since January 15, 2020; *see* Pet., Ex. 2. However, due process violations are held to a two-year statute of limitations from the complained of conduct. *See Johnson v. Wetzel*, 238 A.3d 1172, 1178 (Pa. 2020).

but before the commencement of any Act 84 deductions. The fact of incarceration, and attendant change in circumstances stemming from same does not qualify.

To date, the Courts define a material change of circumstances to include "a threat of additional confinement or increased conditions of supervision as a result of unpaid financial obligations." *Bundy I*, 184 A.3d at 559 (discussing *George* and *Ingram*). The Court in *Bundy I* noted that such circumstances could be expanded to include circumstances where an inmate may lack sufficient funds to pursue or protect his legal rights.

Significantly, Washington did not claim a change in circumstances since his sentencing, other than the fact of his incarceration and attendant reduced income. Specifically, the change in circumstances pled here are the limited income to which Washington has access as an inmate through his pay and from gifts of friends and family, and the increased costs of expenses, including commissary items and legal mail. However, Washington does not allege that he is at risk for increased incarceration or a loss of his legal rights as a result of the five percent increase. As such, Washington does not aver a change in circumstances that warrants an ability-to-pay hearing. Because Washington fails to state a cognizable claim for an ability to pay hearing, we sustain DOC's preliminary objection to this alleged violation of due process.

### III. Conclusion

For the foregoing reasons, we sustain DOC's preliminary objection and dismiss Washington's Petition.

_____
J. ANDREW CROMPTON, Judge

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Washington, : 
                     Petitioner : 
                               : 
         v. :   No. 485 M.D. 2020
                               : 
The PA Department of Corrections, : 
                    Respondent : 

## **O R D E R**

**AND NOW**, this 30th day of December 2021, the preliminary objection of the Pennsylvania Department of Corrections, is SUSTAINED and Thomas Washington's Petition for Review is DISMISSED.

_____<br>
J. ANDREW CROMPTON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Thomas Washington,                     :
                    Petitioner          :
                                        :   No. 485 M.D. 2020
            v.                          :
                                        :   Submitted: January 22, 2021
The PA Department of Corrections,       :
                    Respondent          :


BEFORE:    HONORABLE MARY HANNAH LEAVITT, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE J. ANDREW CROMPTON, Judge


**_OPINION NOT REPORTED_**

DISSENTING OPINION
BY JUDGE McCULLOUGH                         FILED: December 30, 2021


For the reasons discussed in my dissenting opinion in *Beavers v. Pennsylvania Department of Corrections* (Pa. Cmwlth., No. 486 M.D. 2020, filed December 9, 2021), I respectfully dissent from the Majority's disposition in the instant case as well.


                                    _s/ Patricia A. McCullough_
                                    PATRICIA A. McCULLOUGH, Judge